COURT OF APPEALS
DECISION
DATED AND FILED

February 11, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP819-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2014CF932

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ANDRE D. STACKHOUSE,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County:  VINCENT R. BISKUPIC, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Andre Stackhouse, who was captured on video stabbing an individual in a nightclub in front of a police officer, was convicted after

a jury trial of attempted first-degree intentional homicide and aggravated battery, both with a penalty enhancer for the use of a dangerous weapon during the commission of the offense. He seeks a new trial based on over a dozen claims of ineffective assistance of counsel. We conclude that none of the claims are meritorious and affirm.

## BACKGROUND

¶2    Following two attorney changes (neither of which were requested by Stackhouse), the Office of the State Public Defender appointed attorney Rodman Streicher to represent Stackhouse in connection with the charges in this case. The appointment was effective March 24, 2015. On June 4, 2015, Stackhouse notified the circuit court of his intent to pursue a self-defense jury instruction. A three-day jury trial commenced on June 23, 2015, at the conclusion of which the jury found Stackhouse guilty of both offenses.

¶3    The victim, James, did not testify at trial.[1] The State presented evidence that two groups consisting of many familial-related individuals had traveled from Green Bay, on two different party buses, to the Antro Nightclub in Appleton. James was celebrating his wedding anniversary on one of the buses; Don, James's brother, was celebrating his birthday on the other bus. The brothers were not on speaking terms at the time the two groups arrived at Antro, and Don was seen arguing with Jonathan Moore, a member of James's group, while at the club.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2017-18), we use pseudonyms to identify the victim and his immediate family members.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4 A physical altercation occurred between the brothers, and after James walked away from the fight, Stackhouse was overheard telling Moore "I'm going to knock this nigga out," referring to Don. Club security eventually required Stackhouse, Moore and two other members of James's group, Jimmy Flemming and David Atterberry, to leave the club. They all left through the front door but then went around the block and re-entered the club through its back door.

¶5 When they returned to the club, Stackhouse, Moore and Flemming "rushed" Don near a dance floor and began fighting with him. Rachel, who is Don and James's sister, testified she saw Stackhouse fidgeting near his pocket during the altercation and thought he might have had a firearm. Don was punched and went to his knees, at which point James intervened and defended his brother. Stackhouse, who was captured on surveillance video wielding a knife earlier in the evening, was witnessed standing over Don with the knife drawn.

¶6 James then intervened to protect Don, and Flemming, Moore and Stackhouse began beating James. Video footage from Antro's security system was introduced into evidence at trial. The video depicted Stackhouse kicking Don while Don was on the ground. James then intervened to protect Don and was pushed by Moore. Stackhouse swung a fist at James's face, and James then punched him. Stackhouse and James separated briefly, and then Stackhouse lunged at James in a stabbing motion and pointed at him in a gun-like fashion before James was knocked to the ground out of the camera's view. The video depicted Stackhouse kicking in James's direction, as well as making repeated stabbing motions with a pointed object in his hand in the direction in which James fell. Don then intervened and punched Stackhouse in the mouth.

¶7 A law enforcement officer witnessed Stackhouse's knife attack on James. Jay Steinke, a lieutenant with the Appleton Police Department, testified he had responded to a complaint regarding the initial incident, following which Stackhouse and others were asked to leave Antro. After speaking with security personnel in the front of the club, Steinke went around the block in the same path that Stackhouse and the others had taken. Steinke heard another officer radio that the fight had resumed inside Antro, and he entered through the back door of the club.

¶8 Steinke testified that after he entered, he saw the fight in front of him on the dance floor and approached the scuffle. Stackhouse immediately caught Steinke's attention because he was "taking some humongous, wide, very vicious strikes with his right hand" toward a person in front of him. Steinke further elaborated that he noticed Stackhouse had a knife in his right hand and was swinging in a "very vicious, wide-swinging manner" at the victim's torso area. James ultimately suffered multiple stab wounds and was severely injured in the knife attack.

¶9 Steinke deployed his taser to subdue Stackhouse. Don was also tased at approximately the same time as Stackhouse after refusing to comply with officers at the scene. Stackhouse dropped the knife upon being tased, and Steinke recovered it as soon as Stackhouse had been placed in handcuffs. James's DNA was identified in the blood found on the knife. Stackhouse was later arrested at the hospital, at which time police discovered a knife sheath on the right side of his belt.

¶10 Stackhouse's defense counsel framed the case as being "about self-defense, pure and simple." The defense theory was that what had been a fist fight escalated when James, brandishing his own knife, had attempted to stab

Stackhouse in the stomach, prompting Stackhouse to defend himself. The defense highlighted portions of a cell phone video of the incident just before James was stabbed, which the defense argued conclusively showed James making a stabbing motion toward Stackhouse. Atterberry and another witness testified that they saw James make a lunging motion at Stackhouse before Stackhouse retaliated, and Atterberry testified he saw James was holding a knife during this motion.[2] James's wife, Jennifer, testified that other people in the crowd had weapons, and the defense also introduced evidence that James was heavily intoxicated and had a reputation for being aggressive when he was drinking.

¶11    Stackhouse filed a postconviction motion for a new trial based on ineffective assistance of counsel. Stackhouse raised sixteen alleged instances of ineffective assistance, including that his trial counsel had failed to effectively cross-examine certain of the State's witnesses, had failed to call important witnesses as part of the defense case, and had erroneously instructed Stackhouse not to testify. In all, Stackhouse's allegations were directed at the notion that others present at the club had weapons, and they may have inflicted the wounds for which Stackhouse was charged.

¶12    The circuit court held a *Machner*[3] hearing on the motion, at which Streicher testified that he had become certified to handle Class B felonies shortly before Stackhouse's trial and had once before handled a self-defense claim at trial. Streicher testified that based on the strength of the State's case, which included an

---

[2] Atterberry, Stackhouse's older brother, was the only witness to testify that he saw James with a knife, and his testimony was impeached by a police detective who said that Atterberry never mentioned anyone attacking Stackhouse or having a knife during an interview shortly after the incident.

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

eyewitness to the attack and a video of the same, he felt the best strategy was to address the evidence "head on" and argue that Stackhouse's use of force was legally justified.

¶13    The circuit court denied Stackhouse's postconviction motion, concluding there was "no evidence … including video or police reports showing anyone attacking [James] either before or after Mr. Stackhouse was Tased by Lieutenant Steinke."   Among other bases for rejecting Stackhouse's various arguments, the court determined that Streicher's decision to pursue self-defense was a deliberate trial strategy that was reasonably based upon the evidence in the parties' possession.  The court found that two significant witnesses, Flemming and Moore, might have been helpful to Stackhouse but could not be located, consistent with Stackhouse's statement to Streicher that they would not be found if they did not want to be.  The court also noted that many of the statements Stackhouse claimed should have been introduced at trial had significant hearsay problems that were not likely to be overcome.  The court's decision also covered many other aspects of Stackhouse's motion, some of which the court noted had been only minimally developed.

¶14    Stackhouse filed a notice of appeal, which we dismissed based upon Stackhouse's representation that he had discovered new evidence that he wished to present to the circuit court.  Stackhouse then filed a "second supplemental brief" and accompanying motion to reconsider the denial of his postconviction motion. Stackhouse primarily centered his renewed motion on the cell phone video that had been played at trial, contending that a portion of the video showing "another man in combat with the alleged victim" was never played for the jury.  The circuit court denied the renewed motion following additional evidentiary hearings, concluding

Streicher was not deficient, nor was Stackhouse prejudiced by any alleged errors. Stackhouse now appeals.

## DISCUSSION

¶15    Both the state and federal constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. To demonstrate that counsel's assistance was ineffective, the defendant must show that counsel performed deficiently and that the deficient performance was prejudicial. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To demonstrate deficient performance, the defendant must show that counsel's representation was objectively unreasonable under the circumstances. *Strickland*, 466 U.S. at 687. Prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Breitzman*, 378 Wis. 2d 431, ¶39. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *State v. Thiel*, 2003 WI 111, ¶20, 264 Wis. 2d 571, 665 N.W.2d 305).

¶16    Whether a defendant was denied the effective assistance of counsel is a mixed question of fact and law. *Id.*, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.* If a defendant fails to satisfy either prong of the ineffective assistance inquiry, we need not consider the other. *Id.*

¶17    Our review in this case has been significantly hindered by the lack of a coherent organizational structure and developed arguments in Stackhouse's briefs.

For example, the brief-in-chief's first section[4] spans twenty-three pages and, according to its title, concerns only trial counsel's failure to subpoena or otherwise attempt to obtain the testimony of certain allegedly "necessary parties." Yet this section includes not only allegations concerning missing witnesses; Stackhouse also raises within it challenges to his trial counsel's performance regarding the presentation of the cell phone evidence, alleged failure to introduce medical records, and alleged failures during cross-examination of witnesses who did testify. Moreover, Stackhouse jumps from topic to topic without any apparent transition, and his brief intersperses in these materials quotations from other cases without any apparent context. While we have done our best to distill Stackhouse's central arguments from his chaotic briefing (as categorized below), any fault for our failure to address any particular argument Stackhouse wished to have raised is due to the briefing on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (observing that we may decline to review issues that are undeveloped or inadequately briefed).

## I. *Trial counsel's self-defense theory was reasonable.*

¶18 Stackhouse first argues, in essence, that his trial counsel's theory of defense was unreasonable. He asserts the theory of self-defense was contradicted by the video evidence. This argument is also linked to his assertions that other necessary witnesses were not called or were inadequately cross-examined regarding the presence of other weapons at the scene and the nature of James's injuries. The premise of Stackhouse's argument is that counsel should have pursued a defense

---

[4] First in sequence, at least. Stackhouse's brief includes two sections labeled with the Roman numeral "I.," and its table of contents does not subdivide the forty-page argument section.

that others, not Stackhouse, caused the significant stabbing injuries James suffered in the attack.

¶19 We easily reject this argument. As Streicher acknowledged at the *Machner* hearing, the State's evidence implicating Stackhouse in the stabbing of James was quite compelling. Stackhouse was captured on video making repeated stabbing motions in the victim's direction, and a police officer saw Stackhouse commit the stabbing. The officer immediately tased Stackhouse to stop the attack and then picked up the knife Stackhouse had used, which blade contained James's DNA on it. Streicher testified he considered other defenses, including that someone other than Stackhouse had committed the attack, but, in light of the foregoing, found them unpersuasive and unlikely to win the day with a jury.

¶20 Rather, Streicher testified he believed the best strategy was to address the video evidence "head on" and attempt to establish that Stackhouse's plain use of force was justified. Streicher was able to support a self-defense theory with two witnesses who testified that James made a lunging motion at Stackhouse immediately before he was stabbed. Atterberry testified he saw a knife in James's hand at the time, and trial counsel was able to marshal the cell phone video in support of Stackhouse's self-defense claim. Streicher successfully obtained a self-defense instruction based upon Stackhouse's statements to a police officer that he was trying to defend himself.

¶21 Counsel's decisions in choosing a trial strategy are given great deference. *Breitzman*, 378 Wis. 2d 431, ¶38. Here, counsel's decision to pursue self-defense in an effort to obtain an acquittal is the quintessential definition of a strategic choice. Given the available evidence, Streicher's decision to pursue that

defense over other defenses he viewed as less compelling was quite reasonable. Accordingly, Stackhouse's trial counsel did not perform deficiently in this respect.

¶22    Stackhouse makes various arguments suggesting that an alternate theory of defense would have been more appropriate.  For example, he argues that evidence that others had knives "establishes the possibility that the wounds in question were not all caused" by Stackhouse.[5]  Inconsistently, he also appears to argue his trial counsel should have pursued a defense more in line with Stackhouse's initial statements to police—namely, that he was uninvolved in the stabbing and was handed the knife by someone just before he was tased.

¶23    Having considered all of Stackhouse's postconviction allegations, as well as the evidence available to his trial counsel at the time, the alternate theories

---

[5] This argument appears to be based on a belief that specific wounds James suffered as part of the stabbing attack were associated with specific charges.  More specifically, at the *Machner* hearing, postconviction counsel's questioning revealed his belief that a stab wound that caused a perforated colon was the basis for the attempted homicide charge, while a stab wound to the chest/armpit area was the basis for the aggravated battery charge.

This notion of apportioning the wounds was not necessarily the way the case was presented to the jury, nor did the charges require this level of specificity.  Stackhouse was charged with attempted first-degree intentional homicide, which required the State to prove that he had the intent to kill and that his conduct would have caused James's death but for the intervention of another person or some extraneous factor.  *See* WIS. STAT. §§ 939.32(3); 940.01.  Contrary to Stackhouse's postconviction theory, the jury could have reasonably concluded that Stackhouse was guilty of this offense because he would have continued stabbing James had he not been tased by Steinke.  Moreover, *any* of the more severe stab wounds could have established Stackhouse's liability for aggravated battery under WIS. STAT. § 940.19(5).

In short, from a legal standpoint, the underlying premise of Stackhouse's postconviction motion is deeply flawed.  Stackhouse's postconviction theory is that he was merely one participant in the stabbing; he does not appear to argue that he was wholly uninvolved in James's stabbing. Given his undisputed role in the stabbing and the manner in which it was stopped, the State merely had to show that Stackhouse had, as to the homicide charge, formed the intent to kill and had, as to the battery charge, caused great bodily harm.  Thus, evidence of other knives present at the scene or of others participating in the knife attack would not have had the absolving effect postconviction counsel hopes it would.

Stackhouse now prefers seem far less compelling than the self-defense theory actually pursued.[6] As we address in more detail below, Streicher reasonably concluded that the video evidence showing Stackhouse stabbing the victim significantly hindered any argument that Stackhouse did not commit the stabbing. Moreover, Streicher testified during the *Machner* hearing that he did not believe the jury would find Stackhouse's statements to police credible, as Stackhouse's assertion that he was handed the knife after the stabbing was inconsistent with the stabbing motions seen on the surveillance video. Streicher testified he believed it would have hurt Stackhouse's case to argue in the alternative that he did not commit the stabbing, but that if he did, it was in self-defense. And, at the *Machner* hearing, Stackhouse testified he could not remember anyone around him making any stabbing motions at or near the time he was stabbing James.

¶24 Finally, we note that the mere existence of another possible defense does not, ipso facto, establish that the defense actually pursued was not the result of reasoned trial strategy. Most of Stackhouse's postconviction claims are related to the alternate defenses he believes his trial counsel should have pursued. We address Stackhouse's claims more specifically below, but most of them suffer from the defect that his belief as to what trial counsel should have presented was simply not relevant to the self-defense theory actually pursued, which was itself reasonable.

II. *Trial counsel was not deficient for failing to call as trial witnesses any of the individuals Stackhouse now asserts were necessary.*

A. *Jimmy Flemming and Jonathan Moore*

¶25 Stackhouse's brief devotes a significant amount of attention to the absence of Jimmy Flemming and Jonathan Moore at trial, both of whom were

---

[6] The circuit court, too, recognized that Streicher had very narrow options given the evidence, and self-defense was likely the best option at trial.

11

involved in the fight on Stackhouse's side. Streicher testified he wanted to call both men at trial, but his investigator could not locate them. Prior to trial, Stackhouse told Streicher that if Flemming and Moore did not want to be found, they would not be found, and, moreover, that they had left Wisconsin. Nonetheless, Stackhouse argues that Streicher should have applied for material witness warrants to secure their participation in the trial.

¶26 We conclude Stackhouse's trial counsel did not perform deficiently as a result of his failure to obtain the testimony of Flemming and Moore. Even if Streicher had acquired material witness warrants, it would still have been necessary to locate those individuals—something Stackhouse himself had told Streicher was highly unlikely to occur. Moreover, given that Stackhouse said Flemming and Moore had probably left the state, their extradition would be required to secure their presence at Stackhouse's trial. *See* WIS. STAT. § 976.02(3). The time necessary to locate and/or extradite Flemming and Moore could have delayed the trial, and Stackhouse had filed a speedy trial demand.

¶27 Furthermore, Stackhouse has failed to demonstrate any prejudice arising from Flemming and Moore's absence. Neither of them testified at the ***Machner*** hearing, and Stackhouse did not make an offer of proof as to the content of their anticipated testimony. As a result, it remains possible their testimony would have suggested, if not established, that Stackhouse committed the stabbing, and that he did so alone. Put another way, Stackhouse has not demonstrated prejudice because he has not shown a reasonable probability that the result of the proceeding would have been different if Flemming and Moore had been called to testify.

### B. James, the victim

¶28    Stackhouse next challenges his trial counsel's failure to name James as a trial witness.  He appears to argue James would have testified that his sister Rachel had told him that Stackhouse, Flemming and Moore were all involved in the stabbing, because he made a similar statement to police officers when interviewed at the hospital.  During the hospital interview, however, James told officers he did not realize he had been stabbed and did not remember the stabbing.  It therefore appears that James's testimony would not have added anything to the defense case.

¶29    Indeed, presenting James's statements risked undercutting the entire self-defense claim.  Assuming James would have been allowed to testify that he was told multiple people had attacked him—which is a significant assumption, given the rule against hearsay[7]—this testimony would likely have only diminished the need for, or reasonableness of, Stackhouse's purportedly defensive use of force.  When asked at the *Machner* hearing about subpoenaing the victim, Streicher testified he thought not having the victim's testimony weakened the State's case and would cause the jury to question the State's version of events.  We conclude counsel did not perform deficiently by failing to subpoena James, nor has Stackhouse established that the absence of his testimony was prejudicial.

### C. Shantel Jamison and Felicia Felton

¶30    Stackhouse next asserts his trial counsel should have subpoenaed Shantel Jamison and Felicia Felton.  He argues Jamison could have testified that

---

[7] "Hearsay" is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  WIS. STAT. § 908.01(3).  Hearsay is generally inadmissible at trial unless admitted pursuant to a recognized exception. *See* WIS. STAT. § 908.02.

there were three people involved in the fight against James, and Felton could have testified that she heard from Jamison that Flemming was the one who stabbed James. In addition to the hearsay issue surrounding Felton's statement, neither of these witnesses would have bolstered Stackhouse's self-defense claim, which, again, was itself a reasonable trial strategy. The trial evidence was consistent with Jamison's statement that more individuals than just Stackhouse were fighting with James. As Streicher explained, Felton's statement was not of much import to him because only Stackhouse was captured on video stabbing James. We conclude counsel was not deficient for failing to subpoena Jamison or Felton or to otherwise introduce their statements. Additionally, because there was ample evidence at trial that showed several individuals fighting against James, Stackhouse was not prejudiced by the absence of Jamison's testimony.

### D. Don, the victim's brother

¶31 Stackhouse argues Don was a necessary witness at trial. Stackhouse apparently believes Don would have testified that he (Don) had a gun at Antro that night and saw others with knives that looked different than the one Stackhouse was seen wielding. Stackhouse argues the "presence of 3 additional knives and a Gun, adds significant force to the the [sic] apprehension of the defendant as to the likelihood of lethal or substantial force being used against him."

¶32 Stackhouse significantly overemphasizes the importance of evidence regarding other weapons. He does not provide any elaboration upon Don's alleged statement that others had knives, including whom he saw wielding them, and Don did not testify at the ***Machner*** hearing. It is therefore plausible that, consistent with the statements of others raised by Stackhouse in his postconviction motion, the knives were possessed by individuals fighting on his side, thereby potentially

14

undercutting his self-defense claim.[8] Moreover, evidence that Don had a gun at Antro would not have buttressed Stackhouse's trial assertion that he was justified in using lethal force against James. We conclude trial counsel was not deficient for failing to subpoena Don, nor was Stackhouse prejudiced by the absence of his anticipated testimony.

### E. Eric Felton

¶33    According to Stackhouse, Eric Felton told police he "heard words" that an individual whom Stackhouse believes was Flemming had stabbed James. Stackhouse does not address the fact that anything Felton was told by another person regarding who was responsible for the stabbing was hearsay. Because Stackhouse has not demonstrated that the evidence would have been admitted at trial, he has failed to show that counsel performed deficiently by failing to present it.

### F. Stackhouse

¶34    Stackhouse argues that "[n]ot producing [him] to take the stand was fatal to the defense of self-defense, as neither the victim nor the accused testified as to what happened, the level of danger in the scenario, the people involved intent at the time [sic] and much more." As an initial matter, the choice of whether to testify is the defendant's, *State v. Krancki*, 2014 WI App 80, ¶10, 355 Wis. 2d 503, 851 N.W.2d 824, and here, Stackhouse engaged in a thorough colloquy with the circuit court to ensure that he was aware of, and was validly waiving, that right.

¶35    In any event, Streicher was asked during the postconviction proceedings about putting Stackhouse on the stand. He testified he "would have

---

[8] As Streicher acknowledged during the *Machner* hearing, evidence about the presence of other weapons in the crowd was introduced at trial.

loved for Mr. Stackhouse to testify as to why he acted in self-defense and to what he saw. He told us he did not remember any of the relevant events at the time." He later elaborated that Stackhouse did not remember seeing the victim making a stabbing motion toward him, did not remember seeing a knife in the victim's hand, and did not remember feeling that his life was in danger. Streicher believed that having Stackhouse testify that he could not remember any of the relevant events would have been detrimental to the self-defense case, just as it would have been if Stackhouse had testified consistent with his initial statement to police that he was handed the knife just before he was tased.

¶36 To the extent Stackhouse claims it was necessary for him to testify in order to establish his self-defense claim, this assertion is belied by the trial evidence. Streicher successfully obtained a self-defense instruction without revealing Stackhouse's failure to recall the relevant events or exposing Stackhouse to cross-examination by the prosecution. And given the previously mentioned limitations regarding Stackhouse's memory of the events, it is not clear what would have been accomplished by having Stackhouse testify. We conclude there was neither deficient performance nor prejudice with respect to trial counsel's recommendation that Stackhouse not testify.

III. *There is no merit to any claim of ineffective assistance in the cross-examination of witnesses.*

A. *Andrew Avant*

¶37 Next, Stackhouse claims his trial counsel was ineffective in his cross-examination of Andrew Avant, a bouncer at Antro who testified he did not see the stabbing or the tasing occur. Stackhouse argues it should have been elicited that Avant told police after the incident that the "[d]ude with the knife got away." As the circuit court recognized during the trial (outside of the jury's presence), Avant

had difficulty with his memory and, as a result, was not a very credible witness. In any event, even if Stackhouse had been able to effectively cross-examine Avant with his prior statement, it would not have supported Stackhouse's self-defense claim in light of all the other trial evidence. Accordingly, we conclude Stackhouse has not demonstrated that any alleged failures by counsel in this regard were prejudicial.

### B. *Jennifer, James's wife*

¶38 Stackhouse similarly asserts his trial counsel failed to effectively examine Jennifer as part of the defense case, failed to "adequately investigate her knowledge," and failed to cross-examine the police investigator who took her statement. At trial, Jennifer testified that prior to the stabbing, Rachel had started a fight with Don, James and Stackhouse, during which Rachel had injured Stackhouse's hand with a pink pocket knife. Jennifer also made reference to hearing of Don having a gun, which testimony was stricken as hearsay. It is unclear what additional testimony Stackhouse now wishes his trial counsel had elicited that would have supported his self-defense claim. Accordingly, we reject this argument as undeveloped. *See **Pettit***, 171 Wis. 2d at 646.

### C. *Doctor Kenneth Bruder, James's surgeon*

¶39 Stackhouse faults his trial counsel for failing to cross-examine Dr. Bruder "as to the fatal nature of the wounds, the locations of the wounds or the likelihood that all six wounds were consistent with the weapon published to the jury." We have previously addressed (and rejected) the notion that trial counsel was ineffective for not pursuing a defense that others besides Stackhouse were responsible for inflicting some of the injuries to James. Notably, Stackhouse has not established that James's treating physician, Bruder, *would have* testified that

17

some of the wounds were caused by weapons other than Stackhouse's knife had he been so asked. His arguments in this regard are entirely conclusory and are insufficient to demonstrate prejudice.

¶40    Stackhouse also argues that Bruder would have testified that James was intoxicated at the time he was taken to the emergency room and was acting aggressively. The basis for this claim is apparently a medical report noting that James, as a patient, was a "very belligerent [and] agitated" person who was "inebriated with a blood alcohol content of 0.215." However, evidence of James's generally aggressive behavior and drunken state that night was introduced as part of the defense case. Because the desired testimony was duplicative of evidence that was presented during the trial, we cannot conclude to a reasonable probability that additional cross-examination of Bruder along these lines would have made any difference in the outcome of the trial.

### D. Other witnesses

¶41    Stackhouse asserts his trial counsel performed deficiently by failing to call officer Jackie Gleiss and by failing to effectively cross-examine Rachel. We note officer Gleiss did testify at trial and was cross-examined by Streicher. It is difficult to discern what Stackhouse believes Streicher should have presented with respect to these witnesses, but he apparently believes his counsel did not do enough to present evidence that other people had been involved in the fight with the victim and that there were other weapons at the scene. Stackhouse's argument in this regard concerns hearsay statements, the admissibility of which Stackhouse makes no effort to address. Moreover, the evidence Stackhouse apparently wishes to have presented would have done nothing to enhance his self-defense case. Accordingly,

18

we conclude Streicher did not perform deficiently with respect to those witnesses, nor has Stackhouse demonstrated he was prejudiced by any arguable deficiency.

¶42 Also undeveloped is Stackhouse's assertion that his trial counsel failed to effectively cross-examine officer Chue Thao, who assisted in investigating the stabbing. Stackhouse argues Thao had unidentified information pertaining to various witnesses, including Moore and Flemming. Without Stackhouse explaining what information Thao could have presented, we have no basis for concluding trial counsel performed deficiently to Stackhouse's prejudice. This argument consists of only conclusory statements and is wholly undeveloped. *See Pettit*, 171 Wis. 2d at 646.

¶43 Finally, Stackhouse claims his trial counsel should have cross-examined police witnesses on their use of force that night and about their apprehension of harm when intervening in the violent brawl at the club. He appears to argue such testimony was necessary to present a viable self-defense claim. We reject this argument because it was the reasonableness of Stackhouse's use of force, not the police officers' use of force, that was at issue at trial. Moreover, testimony from police officers on the scene regarding their concern for their safety had, at best, minimal relevance to Stackhouse's justification for his use of force during his encounter with James. Again, trial counsel successfully procured a self-defense instruction without this evidence. Accordingly, there is no basis to conclude Streicher was deficient in his cross-examination of police witnesses.

IV. *None of Stackhouse's remaining arguments warrant a new trial based on ineffective assistance of counsel.*

¶44 Stackhouse's remaining arguments are undeveloped and unpersuasive. He argues in conclusory fashion that his trial counsel failed to

19

"pursue, preserve, and present" evidence that Atterberry and Moore had "blood on their person that was arguably attributed directly to the victim." Given that these two individuals were undisputedly engaged in a fight with the victim during which the stabbing occurred, the significance of this evidence is not apparent, and Stackhouse makes no effort to develop an argument that would warrant further analysis. *See Pettit*, 171 Wis. 2d at 646.

¶45    Stackhouse also argues his trial counsel was deficient with respect to his presentation of the cell phone video. One component of this argument is that Streicher was deficient for not playing the final portion of the video, but it is not clear from the trial record that the challenged portion of the video was not played.[9] In any event, it is apparent that Stackhouse believes the video was significant because it showed "multiple people were engaging Stackhouse and his group." Yet the fact that the fight involved individuals beyond just James and Stackhouse was readily apparent based on the trial evidence. Stackhouse has not presented any evidence to cast doubt upon his trial counsel's conclusion that only Stackhouse was captured on video making stabbing motions toward James.

¶46    Stackhouse's final argument consists of his vague assertion that Streicher was inexperienced and unprepared for trial. Stackhouse posits, in conclusory fashion, that "[d]ue to [Streicher's] inexperience and the short time frame he was on the defense[,] there was not adequate time [for Streicher] to file and pursue pre-trial motions." Stackhouse fails to explain what pretrial motions he desired counsel to have filed, or what effect they would have had on the trial. This

---

[9] At trial, Streicher played the video and told the circuit court he would be playing the video "from … 23 seconds until the end." Witnesses during the postconviction proceedings were asked repeatedly if they recalled how much of the video was played at trial, and none could recall whether the video was played to the end.

assertion is merely conclusory and does not establish that his attorney made an error so serious that Stackhouse was effectively deprived of counsel—particularly in a case in which the State had compelling evidence of guilt and trial counsel was successful in obtaining a self-defense instruction. We reject this argument as undeveloped.

¶47 In all, we conclude Stackhouse has not demonstrated that he is entitled to a new trial on the basis that his trial counsel was ineffective. As to each of his arguments (individually or in combination), he has not shown that his trial counsel performed deficiently, that he was prejudiced by any alleged deficiency, or both.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.